IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JOY TECHNOLOGIES INC. and        )
JOY MM DELAWARE INC.,            )
        Plaintiffs,              )
                                 )
    v.                           )   Civil Action No. 05-1066
                                 )
NORTH AMERICAN REBUILD           )
CO., INC.,                       )
                                 )
        Defendant.               )

                            MEMORANDUM

Gary L. Lancaster                             September 29, 2011
Chief Judge.

        The underlying action in this case sounds in trademark infringement and unfair competition. In September of 2006, pursuant to the parties' settlement, the court entered a stipulated order for a permanent injunction and dismissed the case. [doc. no. 29]. Plaintiffs, Joy Technologies Inc. and Joy MM Delaware, Inc. (collectively "Joy"), have now filed a motion for civil contempt alleging that North American Rebuild Company, Inc. ("NARCO") has violated the permanent injunction order and settlement agreement. [doc. no. 32]. Joy seeks an order enjoining NARCO from using its trademarks, as well as an award for expenses incurred in investigating NARCO's activities and in preparing for the contempt hearing, as well as reasonable attorneys' fees and costs. [doc. no. 32 at ¶¶ 26, 27].

The court held a hearing on Joy's motion for civil contempt on September 15, 2011. [doc. no. 44]. Despite explicit instructions to the contrary, Joy filed a post-hearing brief, to which NARCO responded. [doc. nos. 43, 45]. Joy has also now filed a reply brief, which we have stricken as it was filed without first seeking permission from the court in accordance with our practices and procedures. See <u>Practices and Procedures of Chief Judge Gary L. Lancaster</u> at II(B); [doc. no. 46]. Had Joy asked, we would not have allowed it to file the reply brief as we specifically instructed the parties not to file any post-hearing briefs at all. [doc. no 47 at p. 148]. We have similarly stricken Joy's and NARCO's most recent filings as they were not requested by the court and are not needed to dispose of a motion for civil contempt. [doc. nos. 48, 49].

For the reasons set forth below, we deny Joy's motion.

I.   FACTUAL BACKGROUND

Joy is the world's leading manufacturer of equipment used in underground coal mining. NARCO is engaged in the fabrication, reconditioning, and rebuilding of mining equipment, as well as the sale and service of such equipment. NARCO often rebuilds and resells mining machinery that was originally manufactured by Joy. In the underlying case, Joy sued NARCO for selling rebuilt mining machinery bearing Joy's trademarks.

The parties settled the underlying case about a year after it was filed and entered into a Settlement Agreement, the basic terms of which were incorporated into a stipulated order for permanent injunction. [doc. no. 31]. For ease of reference, we will refer to the permanent injunction order and not the Settlement Agreement throughout this opinion, unless otherwise indicated. The documents are the same in all material respects. Because some of the terms of the Settlement Agreement are incorporated into the permanent injunction order and because the order includes a separate provision retaining jurisdiction over enforcement, we have ancillary jurisdiction over this proceeding. Kokkonen v. Guardian Life Ins. Co. of Amer., 511 U.S. 375, 381-82 (1994); Shaffer v. GTE N., Inc., 284 F.3d 500, 503-04 (3d Cir. 2002).

In its motion for civil contempt, Joy contends that NARCO's practice of reproducing and replacing illegible XP tags on component parts manufactured by Joy, but reconditioned by NARCO, violates paragraphs 4(a) and 4(b) of the permanent injunction order. [doc. no. 32 at ¶¶ 12, 25; doc. no. 31 at ¶¶ 4(a) & 4(b)].[1] The Mine Safety and Health Administration issues XP tags to signify that a component part of a piece of mining equipment has been built in compliance with MSHA regulations and requirements and is explosion proof. [doc. no. 32 at ¶ 11]; 30 C.F.R. §18.2. MSHA also issues 2-G tags, which indicate that the design for an entire piece of equipment is in compliance with its regulations. [Id.]. In other words, MSHA issues XP certification for component parts and 2-G approval for entire pieces of mining equipment.

To be clear at the outset, although the permanent injunction order outlines when NARCO must replace a Joy 2-G tag with its own 2-G tag, as well as when it need not do so, it does not establish any guidelines for when NARCO must obtain its own XP tags after refurbishing a component part originally

---

[1] Although Joy also objected in pre-motion correspondence to NARCO's display on its website of mining machines that are painted orange (Joy's signature color), see doc. no. 32 at ¶ 25; doc. no. 31 at ¶ 10, Joy has abandoned that objection. Moreover, although Joy argues in its unsolicited post-hearing brief that NARCO has violated paragraph 4(d) of the stipulated order (paragraph 1.2(c) of the Settlement Agreement), Joy did not include that provision in its motion, nor offer any particularized evidence of its violation at the hearing. [doc. no. 43 at 5]. As such, we dispose of it summarily.

manufactured by Joy. In fact, the term "XP tag" appears nowhere in the permanent injunction order or Settlement Agreement.

An XP tag is a small piece of metal that is attached to each component part included on a piece of mining machinery that has been XP certified by MSHA. A piece of mining machinery could have fourteen or fifteen XP tags on it. [doc. no. 50 at p. 88]. The XP tag, which is approximately two inches, by one inch, or the size of two postage stamps, contains printed information such as the company's name, part and inventory numbers specific to the company, the MSHA certification number, and a statement of compliance with the Code of Federal Regulations. [Plain. Ex. 6]. On specimens of the tags admitted into evidence at the contempt hearing, the Joy name is approximately one sixteenth of an inch in height.

The component parts at issue here are controller enclosures, which are included on the shuttle cars used to transport coal to different parts of the mine. Although there was limited evidence at the contempt hearing indicating that NARCO replaces illegible XP tags on other component parts manufactured by Joy, Joy's motion and chief evidence concentrated on the controller enclosures. Because NARCO's practice of replacing illegible XP tags on other component parts and the related legal issues are the same as when NARCO replaces an XP tag on a controller enclosure, we focus our opinion, just

5

as Joy focused its presentation of evidence, on the controller enclosures. The XP tag on a controller enclosure is placed on the top, right hand corner of the component, and is seen not while facing the side of the shuttle car, but by looking at it from above. [Plain. Ex. 8; doc. no. 50 at p. 16].

II. <u>LEGAL AUTHORITY</u>

A party bringing a motion for civil contempt must prove three things by clear and convincing evidence: (1) that a valid order of the court exists; (2) that the party accused of violating the order had knowledge of it; and (3) that the party accused of violating the order, in fact, violated the order. <u>Marshak v. Treadwell</u>, 595 F.3d 478, 485 (3d Cir. 2009) (quoting <u>Roe v. Operation Rescue</u>, 54 F.3d 133, 137 (3d Cir. 1995)). Sanctions for civil contempt serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by disobedience." <u>Id</u>. at 494 (citations ommitted).

Laches bars a claim for relief if there was: (1) an inexcusable delay in bringing the action; and (2) material prejudice to the non-moving party as a result of the delay. <u>Id</u>. at 496 n.14 (citations omitted).

III. <u>DISCUSSION</u>

There is no dispute that the permanent injunction order exists and is valid and that NARCO has knowledge of it. Therefore, the only question we must decide is whether Joy has proven by clear and convincing evidence that NARCO violated the order. We find that Joy has failed to prove by clear and convincing evidence that NARCO has violated any provision of the permanent injunction order by reproducing and replacing illegible XP tags on Joy component parts during NARCO's rebuild process.

NARCO, which is in the business of rebuilding mining equipment, as it was in 2006 when the Settlement Agreement and permanent injunction order were drafted, does not dispute the facts underlying Joy's allegation. There is no dispute that when NARCO rebuilds or reconditions a piece of mining machinery it reproduces XP tags to replace those that have become illegible. There is no dispute that those XP tags bear the Joy name. There is also no dispute that NARCO has been obtaining its own 2-G tags as required under the terms of the permanent injunction order and labeling the rebuilt machinery with its own NARCO serial number and trademarks.

What is in dispute is whether NARCO's activities violate the permanent injunction order. According to NARCO, it has acted in accordance with the terms of the parties'

7

settlement by retaining Joy's XP tags on any refurbished component parts originally manufactured by Joy, reproducing the tag where necessary if it has become illegible, and placing an original NARCO serial number and NARCO 2-G tag on the piece of rebuilt equipment. [doc. no. 38 at ¶ 12]. NARCO further contends that Joy is unable to obtain any of the relief requested due to its "inexcusable delay." [Id. at ¶¶ 12, 21].

Although not dispositive, we point out that Joy has made no effort to establish that NARCO's practices have changed since this case was settled in 2006 or differ from industry standards or practices. Also, it is important to explicitly emphasize that we are not deciding whether NARCO's practices violate MSHA rules and regulations, nor whether they are legally actionable, theoretically, under any other federal or state laws. We are deciding only whether NARCO has violated the permanent injunction order.

As stated above, Joy accuses NARCO of violating paragraphs 4(a) and 4(b) of the permanent injunction order. Under those paragraphs, NARCO is prohibited from using Joy's trademarks (¶ 4(a)) and from passing off NARCO's products as originating from Joy (¶ 4(b)). However, each paragraph includes important exclusions. Under paragraph 4(b), NARCO commits no passing off if the component originated with Joy. Under paragraph 4(a), "…NARCO may use …component parts bearing the Joy

Trademarks consistent with Paragraphs 5, 8, and 11 below…" As discussed in more detail below, paragraph 5[2] permits Joy's serial number and 2-G tag to remain on a refurbished or rebuilt piece of Joy mining equipment, unless NARCO replaces one of three key component parts. Paragraph 8 permits Joy's trademarks to remain on "Joy manufactured component parts" even if NARCO uses a "non-Joy frame" for a rebuilt mining shuttle car. Paragraph 11 is not material based on the facts before us.

Under paragraphs 5, 6, and 7, if NARCO replaces the canopy, the controller case, or any drives then it must "…remove any Joy serial number plate and any Joy 2-G tag…[and] affix its own NARCO serial number and NARCO 2-G tag to the machine." [doc. no. 31 at ¶ 5-6]. If one of these three key components is not replaced, then NARCO is permitted to repair, refurbish, replace parts, or conduct field modifications of mining equipment without removing Joy's numbers and plates, provided that NARCO attaches a statement indicating that the machine has been rebuilt, repaired, or refurbished by NARCO. [Id. at ¶ 7 ("rebuilt"); Def. Ex. E at ¶ 1.4 ("repaired or refurbished")].[3]

---

[2] Paragraph 5, 6, and 7 of the permanent injunction order correspond to paragraph 1.4 of the Settlement Agreement. [Def. Ex. E at ¶ 1.4].
[3] Joy has offered no explanation as to why the permanent injunction order requires a statement indicating that NARCO "rebuilt" the machine, while the Settlement Agreement requires a statement indicated that NARCO "repaired or refurbished" the machine. This issue, although perplexing, is not germane to the question before us, so we need not concentrate on it.

These provisions identify when Joy's 2-G tags must be removed and replaced with NARCO's own 2-G tags.[4] They do not reference XP tags, the tags at issue here, at all, or set any rules about their removal or replacement. In addition, these provisions make a critical distinction between the act of replacing and the act of refurbishing, repairing, or rebuilding. Despite this distinction, at no time during the hearing did Joy explain the difference between those activities, either as defined by the parties or the mining equipment industry in general. But even if the applicability of these paragraphs is questionable based on the evidence Joy presented, they nevertheless provide some indication of how to answer the question before us because they demonstrate that the parties agreed and acknowledged that the Joy name would still be found on mining equipment that NARCO repaired, refurbished, or rebuilt. They also demonstrate that the parties did not address the replacement of XP tags on component parts refurbished or repaired by NARCO, as the concern of the Settlement Agreement and permanent injunction order was proper 2-G tagging of equipment.

---

[4] Joy has not alleged that NARCO failed to obtain 2-G tags as required by the terms of the Settlement Agreement or permanent injunction order.

NARCO is also permitted under paragraph 8 of the permanent injunction order to "…allow Joy Trademarks to remain on Joy manufactured component parts…" even when NARCO uses a non-Joy frame and, as a result, must attach its own 2-G tag to the equipment. [doc. no. 31 at ¶ 8]. This paragraph is not directly applicable here because Joy presented no evidence at the hearing, or otherwise, that NARCO was including Joy XP tags on mining shuttle cars with "…a non-Joy frame." However, because this paragraph actually addresses the appearance of Joy's name on component parts, it warrants the court's attention.

According to Joy, this paragraph only permits Joy's trademarks to remain on component parts and would not allow the reproduction and replacement of illegible XP tags. We are not persuaded that use of the word "remain" answers the question before us of whether NARCO may replace illegible XP tags during its rebuild process under the terms of the permanent injunction order. To the extent that this provision sheds any light on the issue, it indicates that the parties understood that even if NARCO's rebuild were significant enough to warrant a new NARCO 2-G tag, Joy's name could, and would, still appear on the rebuilt machine's component parts. Joy failed to establish its contention at the contempt hearing that this provision applied only to brand new Joy component parts included on a rebuilt

piece of mining machinery. In light of this failure, as well as the failure of Joy to establish that NARCO was using non-Joy frames, thus triggering this paragraph, we find that use of the word "remain" does not, itself, indicate that NARCO could not reproduce and replace illegible XP tags during its rebuild process.

Joy further argues that this provision does not allow NARCO to reproduce and replace Joy's XP tags because a component part manufactured by Joy is no longer a "Joy manufactured component part" after NARCO refurbishes it, making reattachment of a Joy XP tag misleading and improper. Again, the permanent injunction order does not speak to this issue. The order includes no provisions defining or discussing the point at which a refurbished or reconditioned Joy component part is no longer a Joy component part and becomes a NARCO component part. Joy failed to produce sufficient evidence at the contempt hearing to substantiate its position on this point. Instead, Joy simply refers to such refurbished Joy component parts as "remanufactured" NARCO component parts, apparently believing that its word choice will be sufficient. Without evidence to prove that a Joy manufactured component part loses its characteristic of being a Joy manufactured component part after NARCO refurbishes it, Joy's theory fails.

Finally, although not dispositive, the evidence at the contempt hearing was that the reuse or replacement of illegible XP tags during the rebuild process is common in the industry. [doc. no. 47 at p. 68]. This industry practice may explain why the permanent injunction order does not prohibit NARCO's replacement of illegible XP tags. However, regardless of the reason for this deficiency, and regardless of whether Joy now finds the practice of replacing illegible XP tags objectionable, the fact remains that Joy has failed to establish by clear and convincing evidence that paragraph 4(a) of the permanent injunction order prohibits NARCO's activities.

We now turn to Joy's allegation that NARCO violated paragraph 4(b) of the stipulated order by passing off its products as originating with Joy. This provision specifies that there can be no passing off if the item originated with Joy. There is no dispute that the component parts to which NARCO was attaching the reproduced Joy XP tags originated with Joy. We have already disposed of Joy's contention that once the component parts were refurbished, they were no longer Joy component parts. In addition, we find that there could be no possible passing off because the undisputed evidence was that NARCO was attaching its own 2-G tags and NARCO trademarks to the rebuilt equipment to indicate the source of the equipment. Joy presented no evidence that consumers were confused as to the

13

source of any rebuilt mining equipment.

As such, we find that Joy has failed to sustain its burden to prove by clear and convincing evidence that NARCO has violated either paragraph 4(a) or 4(b) of the permanent injunction order by reproducing and replacing illegible XP tags on component parts manufactured by Joy.

Given that we have denied Joy's motion on the merits, we need not, and do not, address NARCO's laches argument.

IV. <u>CONCLUSION</u>

Because Joy has failed to prove that NARCO violated any provision of the permanent injunction order or Settlement Agreement, we deny its motion for civil contempt.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOY TECHNOLOGIES INC. and )
JOY MM DELAWARE INC., )
    Plaintiffs, )
     )
  v. ) Civil Action No. 05-1066
     )
NORTH AMERICAN REBUILD )
CO., INC., )
     )
    Defendant. )

ORDER

AND NOW, this 29th day of September 2011, IT IS HEREBY ORDERED that Joy's motion for civil contempt [doc. no. 32] is DENIED.

BY THE COURT,

_____, C.J.

cc: All Counsel of Record